Dionicio Anthony CRUZ, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 04–81–00195–CR, 04–81–00196–CR and 04–81–00197–CR.

Court of Appeals of Texas, San Antonio.

Oct. 27, 1982.

Rehearing Denied Nov. 23, 1982.

Discretionary Review Granted May 18, 1983.

499

Gerald H. Goldstein, George W. Baugh, Van G. Hilley, San Antonio, for appellant.

Bill White, Dist. Atty., Douglas V. McNeel, Asst. Dist. Atty., San Antonio, for appellee.

Before ESQUIVEL, BUTTS and BASKIN, JJ.

OPINION

BUTTS, Justice.

This is an appeal from three convictions, two for attempted capital murder and one for deadly assault on a peace officer, all arising from one transaction. The jury having found appellant guilty of the three offenses, the court assessed punishment at fifty years' imprisonment for each offense and imposed concurrent sentences.

Appellant asserts seven grounds of error: that jury misconduct mandated a new trial; that the prosecutor's argument to the jury constituted error in two instances; that admission into evidence of heroin was error as was the hearsay testimony of the chemist; that his motion to suppress the evidence of heroin should have been granted, and that a limiting instruction as to the evidence of heroin should have been given the jury. We disagree with these contentions and affirm the judgment.

The record shows these criminal charges arose on November 11, 1974, when San Antonio Police Department officers and State narcotics agents went to appellant's house with a warrant to search for cocaine. Officer Jimmy Cuellar, together with an agent, "covered" the back door while officers John Hester and Harry Carpenter, with another agent sought entry at the front door. Shots were exchanged: Cuellar was shot in the left shoulder and fell. There was testimony that appellant shot at Carpenter as he ran to the car to call for aid, but the bullets passed through the material of his coat as it moved about his body. His coat, with four bullet holes in the back, was exhibited to the jury. Cuellar testified he heard the continuous flushing of the commode as he lay with his head near the bathroom window. After the shoot-out the officers arrested appellant and a woman companion. They confiscated two guns, a .22 caliber rifle, sawed-off and with a threaded barrel, a .25 caliber gun, and some heroin in a blue balloon inside a shampoo bottle. All of these items were introduced into evidence.

Appellant argues in his first ground of error that the jury, after retiring to deliberate, received other evidence which required the trial court to order a new trial. Tex.Code Crim.Pro.Ann. art. 40.03 (Vernon 1979) states:

New trials, in cases of felony, shall be granted the defendant for the following causes, and for no other:

\* \* \* \* \* \*

(7) Where the jury, after having retired to deliberate upon a case, has received other evidence, . . . .

(8) Where, from the misconduct of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial . . . .

Nine jurors testified at the hearing on appellant's amended motion for new trial. Seven jurors stated that one of the jurors made remarks concerning the appellant's place of business, the Lyons Club, a nightclub. Two jurors were unable to recall any statement made about the nightclub. There was some variation in recollection of the exact words of juror Sanchez. The recollections included: The Lyons Club "was not a very clean looking place," "was not the kind of place you would want to stop at," "had a disreputable air about it," "was in a high crime area." Juror Sanchez admitted his words were based on personal knowledge of the area because his parents lived nearby, as did he, and he drove by the location often. He denied saying this was a "high crime area." He denied making a special trip to see the club. Two jurors testified the statement was made at the time the jury talked about appellant's testimony that he owned and operated the club. Juror Carreker stated they were discussing the evidence that appellant was the owner and "someone" [a juror] knew from the club's location off South Zarzamora that it was in a high crime area.

No juror testified that his or her vote was changed to "guilty" as a result of the remarks. Further, the jury had heard evidence that officer Cuellar, in his position as a vice officer a few years before the instant events, had occasion to be at the same club which appellant also operated at that time. The trial judge asked juror Nevill, the last to testify, "Did you find him guilty because of the disreputable reputation of the Lyons Club?" The answer was no. Appellant testified that he owned and operated the Lyons Club and that he obtained the .22 rifle used by him in these cases from a "guy" who owed a "tab" at the club. The jurors agreed that the remarks by juror Sanchez arose from their discussion of the evidence and that no discussion of his remarks was had by the jury. There was no evidence that any juror was influenced or changed his vote because of the remarks. *McIlveen v. State,* 559 S.W.2d 815 (Tex.Cr. App.1977).

Article 40.03(7), *supra,* mandates reversal when it is shown (1) that unauthorized evidence was *received* by the jury, and (2) that the evidence was *detrimental* to the accused. *Stephenson v. State,* 571 S.W.2d 174, 176 (Tex.Cr.App.1978).

The question whether the jury has received other evidence may be a question of degree; in some instances. An illustration of degree would be: " . . . the mere *mention* of the parole law would not be such misconduct as would require a new trial . . . ." *Stephenson, supra,* at 176, quoting from *Heredia v. State,* 528 S.W.2d 847 (Tex.Cr.App. 1975). *See, Eckert v. State,* 623 S.W.2d 359, 364–65 (Tex.Cr.App.1981) and cases cited therein.

In *Turner v. State,* 169 Tex.Cr.R. 42, 331 S.W.2d 319, 320 (Tex.Cr.App.1960), it was written:

While jurors should not relate their personal experiences during their deliberation upon a jury, it is not every statement made during their deliberations that requires a reversal of the case. In *Collier v. State,* [164 Tex.Cr.R. 91] 297 S.W.2d 160, 162 this court said: 'A juror's statement during the jury's deliberation, to require reversal, should be such that reason and common sense can see it was harmful to the accused.' (Citation omitted.)

In this case whether the Lyons Club was a "disreputable" place was not a central issue. It is the *character* of the "other evidence" that controls. *Rogers v. State,* 551 S.W.2d 369 (Tex.Cr.App.1977). The statements by juror Sanchez were not discussed by the jury. Moreover, the remarks did not touch upon a disputed material issue here as in *Rogers, supra* (identification of the defendant) or *Trevino v. State,* 582 S.W.2d 111 (Tex.Cr.App.1979) (self-defense theory). We hold the trial court did not abuse its discretion in not granting a new trial. We overrule ground of error one.

■■■ Appellant's second ground of error complains that the trial court erred in overruling his objection to a comment made by a prosecutor in his final argument concerning "the permissible testimony" adduced at trial:

> MR. RODRIGUEZ: Somebody's credibility was questioned and three witnesses came over here and gave you testimony . . . the permissible testimony about his credibility and it wasn't refuted. Maybe you did not pay attention to that or maybe you did not hear anything else, but, it was not refuted.
>
> MR. GOLDSTEIN: Your Honor, I object to counsel talking about permissible testimony and what the jury did hear . . . . He is trying to imply something perhaps that the jury did not hear and we object to it.
>
> THE COURT: I overrule your objection.

For a jury argument to constitute reversible error, it must be manifestly improper, harmful and prejudicial, or be violative of a statute, or inject new and harmful facts into the case. *Thomas v. State,* 621 S.W.2d 158, 164 (Tex.Cr.App.1981); *Todd v. State,* 598 S.W.2d 286, 297 (Tex.Cr.App.1980); *Walthall v. State,* 594 S.W.2d 74, 83 (Tex. Cr.App.1980). Whether reversal is necessitated is determined on the basis of the probable effect on the minds of the jurors under the facts of each case. *Blansett v. State,* 556 S.W.2d 322, 328 (Tex.Cr.App. 1977). In this case, the prosecution's statement as to the "permissible testimony" does not fall into any of these forbidden areas.

Further, the statement is not prejudicial since it simply acknowledges the general applicability of the rules of evidence, those rules being repeatedly demonstrated to the jury throughout the trial each time an objection, followed by a ruling, was made. The ground of error is overruled.

Appellant, in his third ground of error contends the trial court erred in overruling his request that the court instruct the jury to disregard the prosecutor's comment in his final argument concerning the threads at the end of the barrel of the rifle used in the shooting. The argument complained of is:

> MR. RODRIGUEZ [prosecutor]: You take all this evidence back there and you think about these little points that were never answered by the defense. You think about this little implement here at the end—you make up your own mind because I don't have to tell you everything. You use your own human experience and judgment and you tell me what kind of a man we are dealing with.
>
> MR. GOLDSTEIN: Your Honor, we are going to object to that because there has not been any testimony about anything of the sort and we are going to object to it to counsel pointing to the end of the rifle and ask what kind of implement is that. That is implying something wholly extraneous in this case and there is no evidence of anything of the sort.
>
> THE COURT: I will say this members of the jury. You in your deliberations, you consider the evidence—you are guided by the evidence that you heard from the witness stand and the exhibits that were admitted into evidence by the court. The lawyers here are not testifying and they are just merely presenting their summations of their case as they see it.

Although the silencer [attachment which fits on end of gun barrel] found by officers in their search of the appellant's premises was an item of evidence suppressed by the court, the State was permitted to question

an officer about the physical characteristics of the threaded end of the barrel of the .22 rifle, which was in evidence. The testimony, in part, was that the rifle barrel had "threads to accept a female screw-type fitting which will screw onto the barrel."

A jury is entitled to avail themselves of knowledge which comes from ordinary experience and observation. *Distler v. State,* 110 Tex.Cr.R. 430, 10 S.W.2d 108 (1928). We find the remark by the prosecutor in this case to be a reasonable deduction from the evidence and it invited the jurors to make the same deduction based on their common knowledge and experience. *Carter v. State,* 614 S.W.2d 821, 823 (Tex.Cr.App. 1981). *See Hadley v. State,* 163 Tex.Cr.R. 571, 294 S.W.2d 717, 719 (Tex.Cr.App.1956) where the prosecutor referred to "an eye dropper and a spoon on which the handle was bent into a curve," and further commented, "You know what they use that for." That case was a prosecution for theft. The Court wrote, "[T]he latter remark is a reasonable deduction from the evidence."

A reasonable deduction from the evidence in the instant case would be that the rifle used by appellant in the shoot-out was adapted for use with a silencer. *See Walthall v. State, supra,* at 83 and cases cited therein. The ground of error is without merit.

Appellant next contends a police officer's statement should not have been admitted in evidence against him and that its admission constituted reversible error. He refers to a discovery order of the trial court and argues that the State's violation of that order by nondisclosure of the statement should preclude its admission into evidence.

On May 19, 1975, San Antonio police officer Ray Hernandez, an investigator at the scene of the instant offense, had two brief encounters with appellant at the courthouse before a pretrial hearing. At the momentary meetings appellant directed some words to the officer. Hernandez reduced the episode to writing at the order of his superiors. His statement reflects this exchange after appellant inquired whether this officer was the one "that found the heroin in the restroom":

APPELLANT: We are going to have to take a lot of tests.

OFFICER: Well, I'll let the Court decide on that.

APPELLANT: I'll get you. [Pause] We'll get you.

Appellant requested in his motion for discovery "[a]ny statement made by defendant to the police [or] District attorney ... within the knowledge of the police or the District Attorney ... whether under arrest or not, or whether written or oral, which might in any manner be material to the guilt or innocence of the defendant." Appellant urges that the statement should have been heard and ruled upon by the trial court at his *Jackson-Denno* hearing. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). He further says that Tex.Code Crim.Pro.Ann. art. 39.14 (Vernon 1979) mandated disclosure, as did the holding of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Whether article 39.14, *supra,* applies to this written statement is doubtful since the *written* statement is that of a witness and specifically excluded from disclosure by the statutory terms. We do find, however, that Tex.Code Crim.Pro.Ann. art. 38.22 (Vernon 1979), the confession statute, applies.

McCormick & R. Ray, Texas Law of Evidence 2d Ed., § 1123 states:

Admissions are frequently employed in criminal prosecutions for the purpose of showing inconsistencies between the defendant's claim of innocence and his prior statements or acts. An admission includes any statement or act of the accused proved against him by the state. A confession is a direct assertion by the accused of the truth of some essential part of the charge against him. Thus a confession is merely one species of admission. In most states mere admissions not amounting to confessions are admitted against the accused without restriction, but in Texas all admissions seem to be required to satisfy the rule as to confessions.

[By footnote is added: That is, they must have been made without any inducement calculated to destroy the trustworthiness.]

By the rebuttal testimony of Hernandez it can be seen that appellant *voluntarily* approached the officer and *voluntarily* made the statements. Hernandez did not question appellant. We agree that the statements should have been disclosed. Failure to disclose, in turn, excluded the statements from the *Jackson-Denno* hearing. The admission into evidence of the statements was error. We must, nevertheless, conclude from our consideration of the record in its entirety that it was harmless error. Although the trial court did not exclude the evidence, we hold its admission here was harmless. *Hollowell v. State,* 571 S.W.2d 179, 180 (Tex.Cr.App.1978).

■ It is axiomatic that when the defendant in a criminal case takes the stand and testifies in his own behalf, he is subject to the same rules as any other witness with the exception of any statutory or constitutional prohibition. The State may seek to impeach his credibility. Here appellant argues he was "set up" by the State when he was asked about the event. He first disclaimed it happened and then stated he did not remember. He says the State by its cross-examination wrongfully paved the way for the rebuttal. We cannot agree with appellant that *Hatley v. State,* 533 S.W.2d 27, 29 (Tex.Cr.App.1976) supports this contention. For in *Hatley* the State presented rebuttal evidence of the deceased's reputation for being a kind and inoffensive person. This was reversible error because the record failed to establish that the defendant's cross-examination and direct examination showed antecedent threats. Further, the court stated, the State's cross-examination of a defense witness did not "open the door" for proof of the reputation of the deceased. That reasoning does not apply here.

We also emphasize that Hernandez' testimony and his written statement did not constitute an indispensable part of the State's case. *Bates v. State,* 587 S.W.2d

121, 131 (Tex.Cr.App.1979). *See e.g., Terrell v. State,* 521 S.W.2d 618 (Tex.Cr.App. 1975), wherein the items not disclosed, and which the defendant had sought to inspect, were contraband, the very basis of the State's case and, therefore, indispensable. Appellant's fourth ground of error is overruled.

■ Appellant's fifth ground of error alleges inadequate predicate for the admission of the toxicologist's testimony under Tex.Rev.Civ.Stat.Ann. art. 3737e(1) (Vernon's 1981). In establishing the substance found in appellant's residence to be heroin, the State elicited the following testimony from William Wilson, Jr., chief forensic toxicologist and chief chemist for the City of San Antonio, Bexar County Regional Crime Laboratory:

Q: [Mr. Rodriguez]: Okay. So far as your office is concerned, do you all keep any records?

A: [Mr. Wilson]: Yes, sir.

Q: Are those records made in the regular course of business?

A: Yes, sir, they are.

Q: All right. And, is it the regular course of your business when an employee or a representative of your business with personal knowledge of the event to make a record thereof?

A: Yes sir.

Q: Are the entries of these records made at or near the time of the happening to the recorded event?

A: That's correct.

Q: Okay. And did you have in your employment in the latter part of February '74 or the early part of '75, a man by the name of Jesse or Jesus Almaguer?

A: Jesus Almaguer?

Q: Yes.

A: Yes, sir, I did.

Q: And is he still with your office?

A: No, sir; he is not.

* * * * * *

Q: Okay, did you have an occasion to bring with you, sir, any sort of records?

A: Yes, sir.

Q: And as such, did you bring those records from your office?

A: Yes, sir; I did.

\* \* \* \* \* \*

Q: Can you identify that as being anything, sir?

A: Yes, sir; this is one of our records.

Q: All right. Is that a copy of the record you have been making mention of?

A: Yes, sir; it is.

Q: Okay. Now, is that labeled something like summation report or what is the title of that exhibit?

A: It is a laboratory report.

Q: Laboratory report?

A: Yes, sir.

Q: And who made that record?

A: Jesus Almaguer.

Proper predicate under 3737e(1), *supra*, requires (1) the record to be made in the regular course of business; (2) it is the regular course of that business for an employee or representative of such a business with personal knowledge of such act, event or condition, to make such memorandum or record or to transmit information thereof to be included in such memorandum or record; and (3) it was made at or near the time of the act, event or condition, or reasonably soon thereafter. Although admission should not be automatically granted upon satisfaction of the statute's formal requirements, there should be a liberal construction in favor of admission where the fundamental trustworthiness of the business record is evident. *Coulter v. State,* 494 S.W.2d 876, 883 (Tex.Cr.App.1973). Once the requisites for admissibility are established, testimony from the report is not dependent on its actual introduction into evidence. *Whitfield v. State,* 492 S.W.2d 502, 505 (Tex.Cr. App.1973); *See, Alvarez v. State,* 508 S.W.2d 100, 102 (Tex.Cr.App.1974).

▮ The toxicologist's testimony clearly satisfies the formal requisites: made in the regular course of business, personal knowledge, and close proximity in time to the transaction. Considering the particular record in the instant case, we find its derivation, nature and manner of compilation are sufficient indicia of reliability and fundamental trustworthiness to justify admissibility. We overrule appellant's ground of error.

Appellant's sixth ground of error contends the trial court erred in denying his motion to suppress the heroin found in appellant's residence. The seventh ground of error complains of the trial court's failure to give a limiting instruction, as requested, when the heroin was admitted into evidence.

The issuance of the search warrant to be executed at appellant's residence was based on information from an undisclosed informant that appellant had cocaine in his possession. Cuellar and agent Bryden testified that during the subsequent shooting they heard a commode continuously flushing inside appellant's residence. After gaining entry, officers searched the bathroom, finding a substance inside a shampoo bottle which was chemically established to be heroin.

▮ An exception to the fundamental rule that an accused is to be tried only for the offense charged is recognized where the extraneous offense is part of the *res gestae* of the charged offense. *Alvarez v. State,* 511 S.W.2d 493, 494 (Tex.Cr.App. 1973). Where an offense is part of the case on trial, or blended or closely interwoven thereto, proof of all such facts is proper. *Welch v. State,* 543 S.W.2d 378, 381 (Tex.Cr. App.1976). Admissibility is predicated on the jury's right to hear what transgressed immediately prior and subsequent to the commission of the offense charged so that they may evaluate the evidence in the context in which the criminal act occurred. *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex. Cr.App.1972). We find the possession of the heroin to be intimately related to and blended with the charged offenses and

properly admissible as *res gestae* of the offenses. Therefore, it was not necessary to give a limiting instruction on an extraneous offense which constituted a part of the *res gestae* of the offenses for which appellant was on trial. *Archer v. State,* 607 S.W.2d 539, 542 (Tex.Cr.App.1981); *Luck v. State,* 588 S.W.2d 371, 376 (Tex.Cr.App. 1979). Appellant's sixth and seventh grounds of error are overruled.

Our examination of appellant's pro se briefs reveals no reversible error. The judgment is affirmed.